UNITED STATES of America.,
Plaintiff,

v.

NUMISGROUP INTL. CORP.; Numismatic Asset Strategies, Inc.; Galerie Des Numismatique, Ltd.; Meridian Numismatics, Inc.; Robert Dupurton; John Laura; Angelina Caltgirone a/k/a "Ann Calta"; Robert Smith a/k/a "Brian Mills" and "Dan Gallagher"; Tom Paull; Nick Ferraro; and Calvin Richard a/k/a "Michael Bennett" and "Tony Bennett," Defendants.

No. 00–CR–352.

United States District Court,
E.D. New York.

Dec. 13, 2000.

Loretta Lynch, United States Attorney, Eastern Dist. of N.Y., Brooklyn, NY by Demetri M. Jones and Vincent LiPari, Asst. United States Attorneys, for Plaintiff.

Grover & Bloch, P.C. by Douglas E. Grover, and Marianne Yen, New York City, for Defendants Numisgroup International Corp., Numismatic Asset Strategies, Inc., Galerie Des Numismatique, Ltd., Meridien Numismatics, Inc., and Robert DuPurton.

Terrence P. Buckley, Islandia, NY, for Defendant John Laura.

Robert N. Nelson, Baldwin, NY, for Defendant Angela Caltagirone.

Iacullo, Saluti & Martino, P.C. Gerald M. Saluti, Montclair, NJ, for Defendant Robert Smith.

Miller & Skubik, LLP. by Richard A. Miller, Islandia, NY, for Defendant Tom Paull.

John S. Wallenstein, Hempstead, NY, for Defendant Nick Ferraro.

Storch, Amini & Munves, P.C. by Norman Trabulus, Mineola, NY, for Defendant Calvin Richard.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This criminal case involves allegations of mail fraud against several coin dealerships, their owners, and employees. Presently before the Court are motions by the corporate entities and their owner, Robert Du-Purton (collectively, "the Numisgroup Defendants") (i) to suppress evidence seized pursuant to a search warrant on the grounds that the warrant was procured with false or misleading statements; (ii) for return of property improperly seized under the warrant; (iii) for dismissal of the indictment; (iv) for severance from the co-defendants; (v) for a Bill of Particulars and certain discovery; (vi) for production of *Brady* material; and (vii) to quash grand jury subpoenas issued by the Government. In addition, DuPurton has made a letter motion for relief from certain bail conditions to allow him to pay accumulating legal expenses. Defendant Paull moves (i) to suppress evidence seized pursuant to the warrant and (ii) for a Bill of Particulars. Defendant Smith moves for (i) severance from all of the other defendants; (ii) for a Bill of Particulars; and (iii) for disclosure of information relating to Michael Zelen, allegedly the Government's confidential informant. Defendants Laura and Ferraro have joined in their co-defendants' motions by letter. Defendant Caltagirone has not joined in any of the pending motions.

## BACKGROUND

On April 5, 2000, the Government filed a thirty-four count indictment against the Defendants. Count One alleged that the Defendants engaged in a conspiracy to commit mail fraud by defrauding purchasers of collectable coins by fraudulently misrepresenting the condition, value, and marketability of coins that they sold. Counts Two through Thirty–Four allege individual acts of mail fraud involving sales to Numisgroup customers nationwide between 1996 and 2000.

## DISCUSSION

### A. As to the motions to suppress

#### (i) Suppression for inaccuracies or omissions in the affidavit

Both the Numisgroup Defendants and Paull seek to suppress all evidence seized pursuant to a search warrant issued on February 25, 2000 by United States Magistrate Judge Viktor V. Pohorelsky. The Defendants contend that the affidavit of Postal Inspector Sol Farash used to obtain the warrant was false and misleading.

■ Suppression of evidence seized pursuant to a warrant is an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *U.S. v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A defendant who makes a "substantial preliminary showing" of knowledge or recklessness by the affiant is entitled to a hearing, at which the defendant bears the burden of establishing such knowledge or recklessness by a preponderance of the evidence. *Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674. However, because truthfulness of *every* statement in the affidavit is not required, *U.S. v. Canfield,* 212 F.3d at 713, 717 (2d Cir.2000); *U.S. v. Trzaska,* 111 F.3d 1019, 1027 (2d Cir.1997),

a defendant seeking suppression must also establish that the claimed inaccuracies or omissions were necessary to the issuing judge's probable cause finding. *Id.; U.S. v. Salameh*, 152 F.3d 88, 113 (2d Cir.1998). Thus, in analyzing a motion for suppression, the Court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant. *Id.*

The Defendants devote several pages of their submissions to catalog alleged inaccuracies in Inspector Farash's affidavit. Many of these alleged inaccuracies, such as claims that Inspector Farash misidentified the number of floors in the building Numisgroup occupies or the spelling of an alleged victim's name are inconsequential. *See Canfield*, 212 F.3d at 718–19 (affidavit referring to "apartment house" as an "apartment building" not materially misleading). Other arguments contend that Inspector Farash misled the magistrate judge by not offering up a thorough dissertation on the vagaries of grading collectible coins, yet do not dispute his fundamental assertion that the Government had some victim's coins re-graded by a reputable coin-grading service. However, the Defendants do point out certain concrete inaccuracies in Inspector Farash's warrant, which the Court will address in turn.

First, in what the Numisgroup Defendants characterize as "perhaps the most significant of the agents' misrepresentations," the Defendants contend that Farash misrepresented Numisgroup's policy on returned coins. Farash's affidavit states "the salesperson [falsely represented to customers] that Numisgroup had a thirty day return policy, when in fact Numisgroup would only, at most, exchange returned coins for coins of equal or lesser value." The Numisgroup Defendants do not deny that returns had to be made within 30 days, but contend that the company had more than $ 2 million in returns in 1999, amounting to 20% of its total sales, and that "generally but not exclusively,"

those purchases were credited to the purchasers credit cards.

Next, the Defendants contend that Inspector Farash misstated several facts involving alleged victim George Barre. According to Farash's affidavit, Barre purchased two 1882 Morgan Silver Dollars, rated as grade MS–65 for a total cost of $ 11,000; one Gold Liberty coin rated MS–63 for $ 8,325; one Gold Kellog & Co. coin rated MS–63 for $ 22,500; and one Gold Indian coin rated MS–63 for $ 6,250. Farash then stated that Barre had the coins re-graded by a reputable agency and appraised by an independent coin dealer. Upon re-grading, the Silver Dollars were reduced three levels from MS–65 to MS–62, and the Gold Indian was reduced thirteen levels from MS–63 to AU–50. The appraiser of the coins estimated the value of the Silver Dollars to be $ 21 each, rather than the $ 5,500 each that Barre paid; the Liberty was estimated to be worth $ 1,400, a difference of almost $ 7,000; the Gold Kellog was worth $ 2,500, approximately one-tenth of its purchase price; and the Gold Indian was appraised at $ 1,400, or about $ 5,000 less than Barre paid. According to the Defendants, Barre misstated the year of the two Silver Dollars, which were actually minted in 1882, and that a published coin guide rates an MS–65 1882 Silver Dollar at $ 15,000. In addition, the Defendants cite several material omissions relating to the grading and valuation of the victims' coins. These alleged omissions are discussed in more detail below.

The Defendants next point out an error regarding alleged victim Roxie Hollingshead. According to Farash's affidavit, Hollingshead purchased a 1921–S Morgan Silver Dollar for $ 7,200. According to the Defendants, the actual invoice price charged to Hollingshead was $ 1,675.

Next, Farash referred to alleged victim John Pirile, who purchased one 1884–O Silver Dollar graded at MS–63 for $ 500; one 1924 Gold St. Gaudens rated MS–66

for a price of $ 2,295; and one 1890 Silver Dollar graded at MS–64/65 for $ 605. An independent appraiser graded the 1884 Silver Dollar as an MS–63 worth $ 100; the St. Gaudens as an MS–61 worth $ 540; and the 1890 Silver Dollar as an MS–62 worth $ 37. The Defendants point out that the appraisal of the 1884 Silver Dollar as the same grade but with a value of only $ 100 should not be considered as Farash provides no details about the appraiser's reputation, overhead, and profit margin.

Farash's next alleged victim was Frank Massa, who purchased one 1853 Gold Liberty, graded as MS–63, for $ 8, 250; one 1911 Gold Indian graded as MS–64 for $ 1,250; one 1924 St. Gaudens graded MS–65 for $ 1,250; and one 1908 St. Gaudens graded MS–65 for $ 1,250. An independent appraisal of these coins revealed the Liberty to be "ungradable because the finish of the coin had been altered" and with a value of only $ 100, a difference of more than $ 8,000 from the purchase price; the Gold Indian to be graded as AU–58, six levels lower than Numisgroup's grade, and worth $ 385, a quarter of the purchase price; and the two St. Gaudens as MS–63 and MS–62, two to three grades lower, and worth only about $ 650, half of the purchase price. The Defendants cite an ambiguity in Farash's affidavit that fails to indicate whether these gradings were made by the national grading service or by the independent dealer himself and, as a result, suggest that the valuations "are meaningless."

Farash next cited to alleged victim Herbert Steidle, whose mother had been charged $ 3,605 for a coin that she claimed not to have ordered. According to Farash, even though Steidle's mother had returned the coin to Numisgroup in May 1999, no refund had ever been credited. Notably, the Defendants do not allege that Farash's affidavit misrepresents any facts regarding Steidle, but does claim that Steidle's version of events is not credible, in part because he is repeating hearsay from his mother who suffers from a "mental infir-

mity," and partly because "the postal inspector made no further effort to ascertain what had happened, but rather, chose to use these questionable facts to inflame his application to the magistrate judge."

Finally, Farash's affidavit indicates that he has spoken with a total of 20 alleged victims, and that "the defendants engaged in similar patterns of conduct with those 20 customers as is described above." The Defendants argue that the evidence regarding the five specific victims is weak, and warrants the inference that the remaining 15 victims have even weaker evidence of fraud.

The Defendants also attack Farash's citation to evidence supplied by a Confidential Informant who was employed by Numisgroup. According to the Defendants, the Informant is Michael Zelen, whom the Defendants contend has been convicted of mail fraud with regard to unrelated coin transactions and that his cooperation was an effort to avoid a lengthy jail sentence on that conviction. The Defendants contend that Farash should have disclosed the Informant's background to the Magistrate Judge, and also should have acknowledged that the Informant "may have been personally involved with fraudulent transactions" in side deals while working with Numisgroup.

■ In the detailed recitation above, the Court discerns only two actual affirmative inaccuracies in Farash's affidavit, namely the minting date of the Silver Dollars purchased by Barre and the purchase price of Hollingshead's coin. Upon close inspection, however, the error regarding Barre is of little comfort to the Defendants. Assuming that the Defendants are correct, and that Barre actually purchased 1882 Silver Dollars, Farash's affidavit merely recites the purchase price of the coins of $ 11,000 and the fact that they appraised three grades lower at a value of only $ 21. The Government never presented Judge Pohorelsky with any inaccurate valuation of the coins based on the incorrect date. Moreover, this Court assumes that the

independent appraisal of the coins was based on a physical examination that would have revealed their actual date. Thus, the inaccuracy cited by the Defendants regarding Barre is of no consequence. Likewise, given the evidence of other victims, striking the portion of the affidavit concerning Hollingshead would not affect the finding of probable cause based on the other allegations.

Therefore, if Farash's affidavit is defective, it must be because of the facts he omitted from it, not because of the facts that were misstated. The omissions the Defendants complain about fall into three general categories: first, that Farash omitted information about the coin grading process; second, that Farash failed to disclose facts about the "independent appraisers"; and third, that Farash failed to disclose facts about the Confidential Informant.

■ In the first category, the Defendants claim that Farash should have explained that grading coins is an inexact science, and that major coin grading services view differences of three grades or less to be insignificant. Notably, this assertion appears to be contradicted by the Defendants' own papers, which state that "the variance of one grade in a coin can mean that the coin can lose (or gain) 90% of its value." The Defendants also point out that the Professional Coin Grading Service ("PCGS"), the service used by the Government to re-grade some of the victims' coins, is noted in the industry for giving the lowest grades.

The Court notes, however, that Inspector Farash provided Magistrate Judge Pohorelsky with a sheet summarizing the "Essential Elements of the [American Numismatic Association] Grading System." This document clearly establishes that coin dealers grade coins on a 70 point scale, and that descriptions of each category rely on highly subjective elements, e.g. "CHOICE ABOUT UNCIRCULATED (AU–55): Barest evidence of light wear on only the highest points of the design.

Most of the mint luster remains." See e.g. U.S. v. Rosa, 11 F.3d 315, 327 (2d Cir. 1993) (warrant affidavit was not misleading where magistrate could infer existence of omitted fact from other facts supplied). The fact that coin graders consider a difference of up to three grades to be insignificant might constitute a relevant fact that should have been provided to Judge Pohorelsky, but even if it had, the evidence establishes that one of Barre's coins was re-graded thirteen levels below the grade claimed by Numisgroup; one of Pirile's coins dropped five levels; and one of Massa's coins was six levels below what was claimed, while a second coin sold to Massa was deemed "ungradable" because it had been altered. Thus, even accounting for variations among coin graders, there is sufficient evidence in Farash's affidavit that Numisgroup repeatedly sold coins that were of conditions substantially below what Numisgroup represented them to be. Finally, while the Defendants may be correct about PCGS consistently giving the lowest grades to coins, the Court assumes that those lower grades are reflected in- or perhaps the cause of—the three-grade margin of error allowed coin evaluations.

■ Next, the Defendants object to Farash relying on valuations from "independent coin dealers" without providing details about their identity, experience, overhead, and motive in giving valuations i.e. whether they might give artificially low valuations if they intended to purchase the coins from the victims. Once again, however, even assuming that Farash's affidavit was amended to highlight the doubts and uncertainties surrounding the appraisals by these dealers, the underlying fact is that several coin dealers in several different locations appraised coins as having values much lower than the value claimed by Numisgroup. Even if the Magistrate Judge had adjusted some of the valuations to account for the uncertainty regarding these dealers, the vast differences between the appraised value of the coins and the

assertions by Numisgroup would support a finding of probable cause.

 Finally, the Defendants allege that Farash failed to highlight the weaknesses of his Confidential Informant. In its opposition to the motion, the Government has neither admitted nor denied that Zelen is the informant that Farash referred to in his affidavit. Assuming, for purposes of this motion, that Zelen is, in fact, the Confidential Informant and that the Defendants have accurately alleged that Zelen is awaiting sentencing on a mail fraud conviction involving sales of coins, the Court is troubled by Farash's failure to note that fact. Nevertheless, determining whether to grant a *Franks* hearing based on the failure to address the reliability of a confidential informant in a search warrant application is an issue to be considered by looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1984); *Leon*, 468 U.S. at 904, 104 S.Ct. 3405. Among the factors considered by the Court is whether some of the informant's information is independently corroborated, *Canfield*, 212 F.3d at 720–21; *U.S. v. Perry*, 643 F.2d 38, 50 (2d Cir.1981) and the basis of the informant's knowledge., *Gates*, 462 U.S. at 233, 103 S.Ct. 2317. Indeed, the Supreme Court in *Gates* has stated that "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Id.* at 234, 103 S.Ct. 2317.

Here, Farash's affidavit establishes that the Confidential Informant had, under the direction of law enforcement, actually obtained a position as a salesperson at Numisgroup. As in *Gates*, first-hand knowledge by the informant often warrants a judge giving weight to his statements despite reservations about the informant's motives or reliability. Moreover, Inspector Farash's interviews with Numisgroup customers offers corroboration of many of the Informant's statements regarding Numisgroup's practice of claiming unwarranted high grades and values of the coins it sold. Considering the totality of the circumstances, the Court finds that there is sufficient evidence of the Confidential Informant's reliability to warrant crediting his statements for purposes of issuing the warrant. In any event, the Court finds that there was probable cause to issue the warrant even without considering the Informant's testimony, and relying solely on the evidence obtained from the victims.

Accordingly, the Court finds that the Defendants have failed to make the required preliminary showing under *Franks* so as to call for a hearing. The motions to suppress are therefore denied.

**(ii) Suppression for overbreadth of the warrant**

 The Numisgroup Defendants raise a separate objection to the overbreadth of the warrant and the Government's seizure of items not described in the warrant.

 The Fourth Amendment requires that a search warrant enable the executing officer to ascertain and identify with reasonable certainty those items that the judge has authorized him to seize. *U.S. v. George*, 975 F.2d 72, 75 (2d Cir. 1992). However, when criminal activity pervades an entire business, seizure of all of the books and records of the business may be permitted without violating the Fourth Amendment. *U.S. Postal Service v. C.E.C. Services*, 869 F.2d 184, 187 (2d Cir.1989); *U.S. v. Cheng*, 1995 WL 168905 (S.D.N.Y.1995).

The warrant issued by Judge Pohorelsky was addressed only to the premises known as One Suffolk Square, Islandia, N.Y., Suite 420, and authorized the seizure of

(1) books and records, including but not limited to mailing lists, customer lists, mailing and shipping records, mailing devices, personnel records [etc.]; (2) fi-

nancial records including, but not limited to, bank statements, checks, deposit and withdrawal slips, invoices, payroll records, receipts, billing records, telephone records; (3) coin cleaning equipment and chemicals; (4) computers and related equipment including but not limited to computer hard drives, computer software, disks, and cd-roms; and (5) gold and silver coins, all of which property constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1341.

Here, it is alleged that Numisgroup was engaging in a systematic and pervasive pattern of fraudulent coin sales, and thus, the issuance of a general warrant for all books and records located at the corporate office does not offend the Fourth Amendment.

### (iii) Suppression and return of seized property

The Numisgroup Defendants allege that the Government seized items not described in the warrant, including coins that were neither gold nor silver, jewelry, and non-coin collectibles. Moreover, they seek suppression and return of any seized item that the Government does not intend to offer at trial pursuant to Rules 12 and 41(e) of the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 41(e) (post-indictment motion for return of property is to be treated as a motion to suppress); *U.S. v. Merchant Diamond Group, Inc.*, 565 F.2d 252, 253 (2d Cir.1977) (granting motion to return property under Rule 41(e) automatically results in suppression of the property at trial). The Government opposes both requests, alleging that it intends to file a superseding indictment containing a forfeiture count.

Rule 41(e) states that a party entitled to lawful possession of seized property may apply to the court for an order directing that it be returned. The Government bears the burden of showing the reasonableness of retaining the property in question, *In re Searches of Semtex Industrial Corp.*, 876 F.Supp. 426, 431 (E.D.N.Y. 1995). The Second Circuit has held that, even though the grand jury remains empaneled, a motion for return of property may lie after a reasonable period of time has passed without action by the grand jury. *Church of St. Matthew v. U.S.*, 845 F.2d 418, 419 (2d Cir.1988).

The Court is sympathetic to the Defendants' complaint that seizure of the entire inventory of gold and silver coins effectively shut down Numisgroup's business, including whatever legitimate sales may have been taking place. In its opposition to the Defendants' motion, the Government does not contend that it intends to offer most of the seized coins as evidence at the trial or that most of the seized coins are otherwise relevant to the proceeding. Instead, the Government relies solely on a promise that the indictment will be superseded to add a forfeiture count at some point in the future.

However, the Government's forfeiture count is entirely premised on allegations already contained within the indictment, and does not appear to be awaiting any additional investigation. The Court is unable to determine why the Government has not sought to add this forfeiture count during the eight months that the present indictment has been pending, particularly as trial in this matter has been scheduled to commence in January. Nevertheless, in an attempt to balance the rights of the Defendants to recovery of their property and the right of the Government to prepare its case fully, the Court conditionally grants the Defendants' motion for suppression and return of those seized items which the Government does not intend to use as evidence at trial. However, this order will become effective only if the Government does not file a superseding indictment containing a forfeiture count within 30 days from December 1, 2000. Should the Government file such a superseding indictment, the order directing the return of the Defendants' property shall be vacated and

the Defendants' motion denied without prejudice.

As to those items, such as jewelry, "medallions," non-coin collectibles, and coins that are not gold or silver that were allegedly seized, the warrant clearly specified seizure of only "gold and silver coins." Accordingly, the Government is directed to return any such items to the Defendants immediately.

Finally, Defendants DuPurton and Paull seek recovery of "personal records" that were seized by the Government from the premises pursuant to the warrant. Other than stating that his records were identified as "Bob's Personal Matters" on the Government's inventory sheet, DuPurton does not describe the contents of the documents he claims are not relevant to the prosecution. Paull describes the records he seeks to recover as "personal records ... regarding my sales and my customers. *Some* of these records came from prior employment I had over a ten year period ... These records included my handwritten notes concerning personal information about my customers such as their occupation, family background, leisure activities, addresses and telephone numbers and preferences regarding their coin collections." (Emphasis added). Paull's description of the documents establishes that while *some* of his personal documents relate to sales prior to his joining Numisgroup, others apparently involve sales he made while at Numisgroup. Moreover, it is undisputed that these documents were present in the Numisgroup offices at the time the warrant was issued. Under these circumstances, Paull's records may be relevant to the prosecution of this case, and his motion to suppress and return these records is denied. Because DuPurton has failed to even appraise the Court of the nature of the records he seeks to recover, his motion is denied without prejudice.

**B. As to the Numisgroup Defendants' motion to dismiss the indictment**

The Numisgroup Defendants contend that the indictment fails to allege that they personally engaged in any illegal activity. According to them, the indictment simply alleges that they engaged in the sale and cleaning of coins, and that they may have overvalued certain coins, but did not direct salespeople to lie or engage in any other acts of fraud. At the outset, the Court notes that questions directed to the sufficiency of the Government's evidence are not considered in ruling on a motion to dismiss the indictment. *U.S. v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998). Rather, the indictment is sufficient as long as it contains the elements of the offense charged and fairly informs the defendant of the charges against him. *U.S. v. Velastegui*, 199 F.3d 590, 592 n. 2 (2d Cir.1999)

Count one of the indictment alleges that "defendants ... did knowingly and intentionally conspire to devise and attempt to devise a scheme or artifice to defraud and to obtain money by false and fraudulent pretenses ...." To allege a conspiracy, the Government is merely required to allege that: (i) the defendant agreed with others to commit the offense; (ii) he knowingly engaged in the conspiracy to commit the offense that was the object of the conspiracy; and (iii) that an overt act was committed by a member of the conspiracy in furtherance of the conspiracy's object. *U.S. v. Monaco*, 194 F.3d 381, 386 (2d Cir.1999); *Salameh*, 152 F.3d at 145–46. Here, the indictment alleges that the Numisgroup Defendants agreed with others to execute a scheme to defraud, and that some thirty-three overt acts were undertaken in furtherance of this conspiracy. While DuPurton argues that the acts specifically attributed to him, such as cleaning coins, are not unlawful, the Court observes that there is no requirement that the overt acts taken in furtherance of the conspiracy be unlawful.

*U.S. v. Montour*, 944 F.2d 1019, 1026 (2d Cir.1991) ("an overt act need not be inherently criminal to support a conspiracy conviction"). Accordingly, the Court finds that Count One of the indictment is sufficient to charge the Numisgroup Defendants with conspiracy.

 The Numisgroup Defendants offer an additional argument for dismissal of Count One, namely, that it actually alleges numerous individual conspiracies and should therefore be dismissed as multiplicitous. The Defendants' argument is without merit. The indictment alleges a single conspiracy with a common goal among all participants—the fraudulent sale of overvalued coins. The fact that this goal is achieved primarily through the efforts of the individual salespersons does not alter the fact that a single conspiracy exists. That a conspiracy may involve multiple stages or spheres of operation is not sufficient to transform a single conspiracy into multiple conspiracies. *U.S. v. Berger*, 224 F.3d 107, 114–15 (2d Cir.2000). The Defendants' remaining arguments that Du-Purton lacked knowledge of the fraudulent activities of rogue sales persons is a matter of fact to be decided by the jury.

 Counts Two through Thirty-Four each allege that the defendants "did knowingly and intentionally devise ... a scheme or artifice to defraud and to obtain money by materially false and fraudulent pretenses" and mailed invoices to various addresses by United States Mail to do so. The elements of a charge of mail fraud are (i) a scheme to defraud; (ii) to obtain money or property; and (iii) use of the mails to further the scheme. *U.S. v. Autuori*, 212 F.3d 105, 115 (2d Cir.2000); *U.S. v. Kinney*, 211 F.3d 13, 17 (2d Cir. 2000). The language of the indictment clearly alleges each of these elements. Moreover, taken as a whole, the indictment clearly describes the "scheme or artifice" to entail Numisgroup making false representations as to the value of coins sold. Numisgroup and DuPurton are specifically alleged as defendants participating in each

count. Accordingly, the indictment sufficiently states counts of mail fraud against the Numisgroup Defendants.

Therefore, the motions by the Numisgroup Defendants to dismiss the indictment are denied.

**C. As to the motions for severance**

 The Numisgroup Defendants seek severance of their trial from that of the other Defendants on the ground that Du-Purton intends to introduce evidence which would exonerate him and incriminate his Co–Defendants. DuPurton does not provide details of this evidence, other than to characterize it as "certain self-incriminating statements of co-defendants that are exculpatory as to him." Defendant Smith also seeks severance of his trial from his co-defendants, relying on DuPurton's claim that he intends to present an antagonistic defense.

 There is a preference in the federal system for joint trials of defendants who are indicted together, *Zafiro v. U.S.*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and the court should sever trials of co-defendants under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Id.* at 539, 113 S.Ct. 933; *U.S. v. Rahman*, 189 F.3d 88, 122 (2d Cir.1999). Defenses that incriminate a co-defendant "are not prejudicial *per se* " and the trial court has the discretion to tailor appropriate relief under the facts of the particular case. *Id.* at 539, 113 S.Ct. 933; *Salameh*, 152 F.3d at 116. Indeed, the Supreme Court has held that, instead of severance, "limiting instructions often will suffice to cure any risk of prejudice." *Id.* at 539, 113 S.Ct. 933. A defendant seeking severance because he intends to present a defense antagonistic to his co-defendant must, at a minimum, make a factual demonstration that "acceptance of [his] defense would tend to preclude the

acquittal of [the] other [defendant]." *Salameh,* 152 F.3d at 116.

DuPurton argues that his defense strategy will first entail attempting to disprove that any of his salespeople made fraudulent representations concerning the coins they sold. He also intends to contend that any such statements "were beyond [the] knowledge and/or control" of the corporation and himself. The jury's acceptance of either of these defenses would not prevent the jury from acquitting the other Defendants, and thus, the defenses are not sufficiently antagonistic to require severance under *Zafiro.*

■■■■■ ˙ As to DuPurton's claim that he intends to offer "self-incriminating statements of co-defendants that are exculpatory as to him," the Court is unable to determine how he intends to present such evidence. Unlike the typical situation in *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Gray v. Maryland,* 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), in which the Government seeks to introduce a confession by one defendant which would incriminate a co-defendant, DuPurton would not be offering his statement as evidence *against* his co-defendant, and thus, would be unable to introduce the statement as a non-hearsay admission under Fed.R.Evid. 801(d)(2). ("A statement is not hearsay if . . . the statement is offered against a party . . . ."); *U.S. v. Harwood,* 998 F.2d 91, 97–98 (2d Cir.1993) (defendant could not introduce statement made by co-defendant as admission by party opponent). Moreover, academically, the Court has difficulty envisioning how DuPurton intends to harmonize the introduction of an allegedly inculpatory statement by a co-defendant with his stated intent to present a defense that no fraudulent representations were made by any of the salespersons (although the Court is aware that alternative defenses may be asserted). In any event, the Court is not prepared to grant severance of DuPurton's trial on the basis of his vague description of the evidence he intends to offer, particularly in light of the well-established preference for joint trials in the federal system.

Accordingly, the Defendants' motions for severance are denied.

### D. As to the Bill of Particulars

■■■ Both the Numisgroup Defendants and Paull move for a Bill of Particulars. The Numisgroup Defendants request that the Government specifically identify individuals referred to in the indictment as simply "employees" or "others"; to specify which coins were allegedly misrepresented and the Government's estimate of the true value of those coins; and which corporate Defendants are alleged to be responsible for each mailing. Paull additionally requests information regarding the specific nature of the false representations; the identity of the person actually mailing the fraudulent matter; and the amount of money obtained from each fraud.

The Court finds that the superseding indictment is sufficiently specific as to the essential elements of each count. An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and enables him to pursue the matter and not run afoul of future prosecutions for the same offense. *U.S. v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999); *U.S. v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988); *McKay,* 70 F.Supp.2d at 212. As the Second Circuit has stated:

> The function of a bill of particulars is to provide defendant with information about the details of the charge against him, if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial. . . . A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. . . . *Acquisition of evidentiary detail is not the function of a bill of particulars* . . . . So long as the defen-

dant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion. *U.S. v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. den.* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) (emphasis added).

The superseding indictment is sufficiently specific. It tracks the language of the statute on each count, *McKay,* 70 F.Supp.2d at 212; *U.S. v. Aliperti,* 867 F.Supp. 142 (E.D.N.Y.1994), and sufficiently appraises the Defendants of enough specific detail surrounding each allegation to enable them to prepare a defense. Much of the information, such as the identity of the corporate Defendant alleged to be responsible for each mailing or the coins alleged to be the subject of the false statements, should be readily apparent to the Defendants from their own records. In addition, the Government has made extensive disclosure of evidence to the Defendants and is under a continuing obligation to do so, largely ameliorating any need for a bill of particulars to flesh out allegations in the indictment. *Walsh,* 194 F.3d at 47 ("a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means").

Accordingly, the motions by the Numisgroup Defendants and Paull for a Bill of Particulars is denied.

### E. As to the motions for various discovery

■ The Numisgroup Defendants also move for discovery of evidence involving Michael Zelen, the Government's alleged Confidential Informant, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). They seek "instruction[s] he received from his supervisory agents, [records] of contacts [the Government] made with him, what kind of promises were made to him, [and] whether he was instructed to record his dealings with the putative targets." The Government has already produced a plea agreement relating to a charge faced by Zelen in Pennsylvania.

■ *Brady* requires the Government to disclose material exculpatory evidence known to it but does not require the government to disclose all evidence in its possession that might assist defense preparation. *U.S. v. Middlemiss,* 217 F.3d 112, 123 (2d Cir.2000). The Government asserts that it is aware of its *Brady* obligations, that it has turned over all applicable materials to the defense, and that it acknowledges its continuing duty to do so. In the absence of a particularized showing by the defense that certain materials covered by *Brady* are being withheld, the Court accepts the Government's good faith assertion as sufficient. *U.S. v. Jones,* 2000 WL 1448640 (S.D.N.Y.2000); *U.S. v. Juliano,* 2000 WL 640644 (S.D.N.Y.2000).

Accordingly, the Numisgroup Defendants' motion for additional discovery is denied.

### F. As to the motion to quash the grand jury subpoenas

The Defendants moved to quash grand jury subpoenas served upon several former employees of Numisgroup on the grounds that the Government sought their testimony to assist in preparation for trial, not for genuine investigative purposes.

On November 15, 2000, this Court heard from both counsel on the Defendants' motion to quash the subpoenas. At that time, the Court denied the Defendants' motion to the extent that the subpoenas sought information concerning new victims or crimes not contained in the current indictment. The Court sees no reason to revisit the November 15, 2000 ruling at this time.

### G. DuPurton's motion for bail modification

■ Defendant DuPurton separately submitted a letter application for a modification of his bail conditions. Following

arraignment, DuPurton was released on a bail package consisting of a bond secured by real property worth approximately $200,000 and $40,000 in cash. In April 2000, the bail package was modified to permit DuPurton to engage in limited transactions with other coin dealers under specific circumstances.

DuPurton's current application for bail modification is ambiguous. After reciting the history of the case, DuPurton's counsel states that he has been unable to engage in any permitted coin transactions because all of his assets have been frozen by the Government. The following paragraph expresses DuPurton's belief that the Government's case is without merit, and that it has dramatically affected DuPurton's ability to make a living. Counsel then explains that the case imposes a significant burden on counsel for preparation and presentation of the defense case. The final paragraph states "we respectfully request that the conditions of bail be modified so that $40,000 presently being held by the Court as a portion of the security underlying the personal recognizance bond ... be released so that it can be used for legal fees and expenses related to the defense of the case." The Government has indicated that it takes no position on this request.

The Court is inclined to read the portion of DuPurton's letter regarding his inability to make the coin transactions because of the Government seizure as an explanation why he now needs to obtain the $40,000 in cash to continue financing his defense. The Court finds that the continued financing of a defense is an acceptable basis for modifying the bail conditions, while replenishment of an inventory to begin making wholesale coin transactions is not. Therefore, in light of the Government's failure to object to DuPurton's request, the bail conditions are modified to permit DuPurton to withdraw the $40,000 deposited with this Court and to expend such funds *solely* for fees and expenses connected with the defense of this case.

## CONCLUSION

For the foregoing reasons, the motions to suppress all evidence seized pursuant to the search warrant are DENIED. The motions to suppress and return those coins seized pursuant to warrant that the Government does not intend to offer as evidence at trial are GRANTED UNLESS the Government files a superseding indictment containing a forfeiture count within 30 days of December 1, 2000. The motions to suppress and return items of jewelry and coins that are not gold or silver, and non-coin collectibles is GRANTED. The motions by the Numisgroup Defendants to dismiss the indictment are DENIED. The motions for severance are DENIED. The motions for additional discovery are DENIED. The motion to quash the grand jury subpoena is DENIED on the terms set by this Court on November 15, 2000. Defendant DuPurton's motion for bail modification is GRANTED, and the Clerk of the Court is directed to release the $40,000 deposited by him.

**SO ORDERED**