# GRAY *v.* MARYLAND

No. 96–8653.  Argued December 8, 1997—Decided March 9, 1998

186

BREYER, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SOUTER, and GINSBURG, JJ., joined. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and KENNEDY and THOMAS, JJ., joined, *post*, p. 200.

*Arthur A. DeLano, Jr.,* argued the cause for petitioner. With him on the briefs were *Stephen E. Harris* and *Nancy S. Forster.*

*Carmen M. Shepard,* Deputy Attorney General of Maryland, argued the cause for respondent. With her on the brief were *J. Joseph Curran, Jr.,* Attorney General, and *Gary E. Bair* and *Mary Ellen Barbera,* Assistant Attorneys General.

*Roy W. McLeese III* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Waxman, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.*\*

---

\**David Reiser* and *Barbara E. Bergman* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of New York et al. by *Dennis C. Vacco,* Attorney General of New York, *Barbara G. Billet,* Solicitor General, *Peter H. Schiff,* Deputy Solicitor General, and *Marlene O. Tuczinski,* Assistant Attorney General, *John M. Bailey,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *M. Jane Brady* of Delaware, *Margery S. Bronster* of Hawaii, *Richard P. Ieyoub* of Louisiana, *Frank J. Kelley* of Michigan, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *W. A. Drew Edmondson* of Oklahoma, *Jan Graham* of Utah, and *William H. Sorrell* of Vermont; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

JUSTICE BREYER delivered the opinion of the Court.

The issue in this case concerns the application of *Bruton* v. *United States*, 391 U. S. 123 (1968). *Bruton* involved two defendants accused of participating in the same crime and tried jointly before the same jury. One of the defendants had confessed. His confession named and incriminated the other defendant. The trial judge issued a limiting instruction, telling the jury that it should consider the confession as evidence only against the codefendant who had confessed and not against the defendant named in the confession. *Bruton* held that, despite the limiting instruction, the Constitution forbids the use of such a confession in the joint trial.

The case before us differs from *Bruton* in that the prosecution here redacted the codefendant's confession by substituting for the defendant's name in the confession a blank space or the word "deleted." We must decide whether these substitutions make a significant legal difference. We hold that they do not and that *Bruton*'s protective rule applies.

I

In 1993, Stacey Williams died after a severe beating. Anthony Bell gave a confession, to the Baltimore City police, in which he said that he (Bell), Kevin Gray, and Jacquin "Tank" Vanlandingham had participated in the beating that resulted in Williams' death. Vanlandingham later died. A Maryland grand jury indicted Bell and Gray for murder. The State of Maryland tried them jointly.

The trial judge, after denying Gray's motion for a separate trial, permitted the State to introduce Bell's confession into evidence at trial. But the judge ordered the confession redacted. Consequently, the police detective who read the confession into evidence said the word "deleted" or "deletion" whenever Gray's name or Vanlandingham's name appeared. Immediately after the police detective read the redacted confession to the jury, the prosecutor asked, "after he gave you that information, you subsequently were able

to arrest Mr. Kevin Gray; is that correct?" The officer responded, "That's correct." App. 12. The State also introduced into evidence a written copy of the confession with those two names omitted, leaving in their place blank white spaces separated by commas. See Appendix, *infra.* The State produced other witnesses, who said that six persons (including Bell, Gray, and Vanlandingham) participated in the beating. Gray testified and denied his participation. Bell did not testify.

When instructing the jury, the trial judge specified that the confession was evidence only against Bell; the instructions said that the jury should not use the confession as evidence against Gray. The jury convicted both Bell and Gray. Gray appealed.

Maryland's intermediate appellate court accepted Gray's argument that *Bruton* prohibited use of the confession and set aside his conviction. 107 Md. App. 311, 667 A. 2d 983 (1995). Maryland's highest court disagreed and reinstated the conviction. 344 Md. 417, 687 A. 2d 660 (1997). We granted certiorari in order to consider *Bruton*'s application to a redaction that replaces a name with an obvious blank space or symbol or word such as "deleted."

## II

In deciding whether *Bruton*'s protective rule applies to the redacted confession before us, we must consider both *Bruton* and a later case, *Richardson* v. *Marsh,* 481 U. S. 200 (1987), which limited *Bruton*'s scope. We shall briefly summarize each of these two cases.

*Bruton,* as we have said, involved two defendants—Evans and Bruton—tried jointly for robbery. Evans did not testify, but the Government introduced into evidence Evans' confession, which stated that both he (Evans) and Bruton together had committed the robbery. 391 U. S., at 124. The trial judge told the jury it could consider the confession

as evidence only against Evans, not against Bruton. *Id.*, at 125.

This Court held that, despite the limiting instruction, the introduction of Evans' out-of-court confession at Bruton's trial had violated Bruton's right, protected by the Sixth Amendment, to cross-examine witnesses. *Id.*, at 137. The Court recognized that in many circumstances a limiting instruction will adequately protect one defendant from the prejudicial effects of the introduction at a joint trial of evidence intended for use only against a different defendant. *Id.*, at 135. But it said:

> "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect . . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination." *Id.*, at 135–136 (citations omitted).

The Court found that Evans' confession constituted just such a "powerfully incriminating extrajudicial statemen[t]," and that its introduction into evidence, insulated from cross-examination, violated Bruton's Sixth Amendment rights. *Id.*, at 135.

In *Richardson* v. *Marsh, supra,* the Court considered a redacted confession. The case involved a joint murder trial of Marsh and Williams. The State had redacted the confession of one defendant, Williams, so as to "omit all reference"

to his codefendant, Marsh—"indeed, to omit all indication that *anyone* other than . . . Williams" and a third person had "participated in the crime." *Id.*, at 203 (emphasis in original). The trial court also instructed the jury not to consider the confession against Marsh. *Id.*, at 205. As redacted, the confession indicated that Williams and the third person had discussed the murder in the front seat of a car while they traveled to the victim's house. *Id.*, at 203–204, n. 1. The redacted confession contained no indication that Marsh—or any other person—was in the car. *Ibid.* Later in the trial, however, Marsh testified that she was in the back seat of the car. *Id.*, at 204. For that reason, in context, the confession still could have helped convince the jury that Marsh knew about the murder in advance and therefore had participated knowingly in the crime.

The Court held that this redacted confession fell outside *Bruton*'s scope and was admissible (with appropriate limiting instructions) at the joint trial. The Court distinguished Evans' confession in *Bruton* as a confession that was "incriminating on its face," and which had "expressly implicat[ed]" Bruton. 481 U. S., at 208. By contrast, Williams' confession amounted to "evidence requiring linkage" in that it "became" incriminating in respect to Marsh "only when linked with evidence introduced later at trial." *Ibid.* The Court held

> "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.*, at 211.

The Court added: "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.*, at 211, n. 5.

### III

Originally, the codefendant's confession in the case before us, like that in *Bruton*, referred to, and directly implicated, another defendant. The State, however, redacted that confession by removing the nonconfessing defendant's name. Nonetheless, unlike *Richardson*'s redacted confession, this confession refers directly to the "existence" of the nonconfessing defendant. The State has simply replaced the nonconfessing defendant's name with a kind of symbol, namely, the word "deleted" or a blank space set off by commas. The redacted confession, for example, responded to the question "Who was in the group that beat Stacey," with the phrase, "Me,            ,            and a few other guys." See Appendix, *infra*, at 199. And when the police witness read the confession in court, he said the word "deleted" or "deletion" where the blank spaces appear. We therefore must decide a question that *Richardson* left open, namely, whether redaction that replaces a defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted," or a similar symbol, still falls within *Bruton*'s protective rule. We hold that it does.

*Bruton*, as interpreted by *Richardson*, holds that certain "powerfully incriminating extrajudicial statements of a codefendant"—those naming another defendant—considered as a class, are so prejudicial that limiting instructions cannot work. *Richardson*, 481 U. S., at 207; *Bruton*, 391 U. S., at 135. Unless the prosecutor wishes to hold separate trials or to use separate juries or to abandon use of the confession, he must redact the confession to reduce significantly or to eliminate the special prejudice that the *Bruton* Court found. Redactions that simply replace a name with an obvious blank space or a word such as "deleted" or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result.

For one thing, a jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant.  This is true even when the State does not blatantly link the defendant to the deleted name, as it did in this case by asking whether Gray was arrested on the basis of information in Bell's confession as soon as the officer had finished reading the redacted statement.  Consider a simplified but typical example, a confession that reads "I, Bob Smith, along with Sam Jones, robbed the bank."  To replace the words "Sam Jones" with an obvious blank will not likely fool anyone.  A juror somewhat familiar with criminal law would know immediately that the blank, in the phrase "I, Bob Smith, along with        , robbed the bank," refers to defendant Jones.  A juror who does not know the law and who therefore wonders to whom the blank might refer need only lift his eyes to Jones, sitting at counsel table, to find what will seem the obvious answer, at least if the juror hears the judge's instruction not to consider the confession as evidence against Jones, for that instruction will provide an obvious reason for the blank.  A more sophisticated juror, wondering if the blank refers to someone else, might also wonder how, if it did, the prosecutor could argue the confession is reliable, for the prosecutor, after all, has been arguing that Jones, not someone else, helped Smith commit the crime.

For another thing, the obvious deletion may well call the jurors' attention specially to the removed name.  By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference.  That is why Judge Learned Hand, many years ago, wrote in a similar instance that blacking out the name of a codefendant not only "would have been futile. . . . [T]here could not have been the slightest doubt as to whose names had been blacked out," but "even if there had been, that blacking out itself would

have not only laid the doubt, but underscored the answer." *United States* v. *Delli Paoli,* 229 F. 2d 319, 321 (CA2 1956), aff'd, 352 U. S. 232 (1957), overruled by *Bruton* v. *United States,* 391 U. S. 123 (1968). See also *Malinski* v. *New York,* 324 U. S. 401, 430 (1945) (Rutledge, J., dissenting) (describing substitution of names in confession with "X" or "Y" and other similar redactions as "devices . . . so obvious as perhaps to emphasize the identity of those they purported to conceal").

Finally, *Bruton's* protected statements and statements redacted to leave a blank or some other similarly obvious alteration function the same way grammatically. They are directly accusatory. Evans' statement in *Bruton* used a proper name to point explicitly to an accused defendant. And *Bruton* held that the "powerfully incriminating" effect of what Justice Stewart called "an out-of-court accusation," 391 U. S., at 138 (concurring opinion), creates a special, and vital, need for cross-examination—a need that would be immediately obvious had the codefendant pointed directly to the defendant in the courtroom itself. The blank space in an obviously redacted confession also points directly to the defendant, and it accuses the defendant in a manner similar to Evans' use of Bruton's name or to a testifying codefendant's accusatory finger. By way of contrast, the factual statement at issue in *Richardson*—a statement about what others said in the front seat of a car—differs from directly accusatory evidence in this respect, for it does not point directly to a defendant at all.

We concede certain differences between *Bruton* and this case. A confession that uses a blank or the word "delete" (or, for that matter, a first name or a nickname) less obviously refers to the defendant than a confession that uses the defendant's full and proper name. Moreover, in some instances the person to whom the blank refers may not be clear: Although the followup question asked by the State in this case eliminated all doubt, the reference might not be

transparent in other cases in which a confession, like the present confession, uses two (or more) blanks, even though only one other defendant appears at trial, and in which the trial indicates that there are more participants than the confession has named. Nonetheless, as we have said, we believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word "delete," a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results.

## IV

The State, in arguing for a contrary conclusion, relies heavily upon *Richardson*. But we do not believe *Richardson* controls the result here. We concede that *Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially. 481 U. S., at 208. We also concede that the jury must use inference to connect the statement in this redacted confession with the defendant. But inference pure and simple cannot make the critical difference, for if it did, then *Richardson* would also place outside *Bruton*'s scope confessions that use shortened first names, nicknames, descriptions as unique as the "red-haired, bearded, one-eyed man-with-a-limp," *United States* v. *Grinnell Corp.*, 384 U. S. 563, 591 (1966) (Fortas, J., dissenting), and perhaps even full names of defendants who are always known by a nickname. This Court has assumed, however, that nicknames and specific descriptions fall inside, not outside, *Bruton*'s protection. See *Harrington* v. *California*, 395 U. S. 250, 253 (1969) (assuming *Bruton* violation where confessions describe codefendant as the "white guy" and gives a description of his age, height, weight, and hair color). The Solicitor General, although supporting Maryland in this case, concedes that this is appropriate. Brief for United States as *Amicus Curiae* 18–19, n. 8.

That being so, *Richardson* must depend in significant part upon the *kind* of, not the simple *fact* of, inference. *Richardson*'s inferences involved statements that did not refer directly to the defendant himself and which became incriminating "only when linked with evidence introduced later at trial." 481 U. S., at 208. The inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face, in *Richardson*'s words, "*facially* incriminat[es]" the codefendant. *Id.*, at 209 (emphasis added). Like the confession in *Bruton* itself, the accusation that the redacted confession makes "is more vivid than inferential incrimination, and hence more difficult to thrust out of mind." 481 U. S., at 208.

Nor are the policy reasons that *Richardson* provided in support of its conclusion applicable here. *Richardson* expressed concern lest application of *Bruton*'s rule apply where "redaction" of confessions, particularly "confessions incriminating by connection," would often "not [be] possible," thereby forcing prosecutors too often to abandon use either of the confession or of a joint trial. 481 U. S., at 209. Additional redaction of a confession that uses a blank space, the word "delete," or a symbol, however, normally is possible. Consider as an example a portion of the confession before us: The witness who read the confession told the jury that the confession (among other things) said,

> "Question: Who was in the group that beat Stacey?
> "Answer: Me, deleted, deleted, and a few other guys."
> App. 11.

Why could the witness not, instead, have said:

> "Question: Who was in the group that beat Stacey?
> "Answer: Me and a few other guys."

*Richardson* itself provides a similar example of this kind of redaction. The confession there at issue had been "redacted to omit all reference to respondent—indeed, to omit all indication that anyone other than Martin and Williams participated in the crime," 481 U. S., at 203 (emphasis deleted), and it did not indicate that it had been redacted. But cf. *post*, at 203 (SCALIA, J., dissenting) (suggesting that the Court has "never before endorsed . . . the redaction of a statement by some means other than the deletion of certain words, with the fact of the deletion shown").

The *Richardson* Court also feared that the inclusion, within *Bruton*'s protective rule, of confessions that incriminated "by connection" too often would provoke mistrials, or would unnecessarily lead prosecutors to abandon the confession or joint trial, because neither the prosecutors nor the judge could easily predict, until after the introduction of all the evidence, whether or not *Bruton* had barred use of the confession. 481 U. S., at 209. To include the use of blanks, the word "delete," symbols, or other indications of redaction, within *Bruton*'s protections, however, runs no such risk. Their use is easily identified prior to trial and does not depend, in any special way, upon the other evidence introduced in the case. We also note that several Circuits have interpreted *Bruton* similarly for many years, see, *e. g., United States* v. *Garcia*, 836 F. 2d 385 (CA8 1987); *Clark* v. *Maggio*, 737 F. 2d 471 (CA5 1984), yet no one has told us of any significant practical difficulties arising out of their administration of that rule.

For these reasons, we hold that the confession here at issue, which substituted blanks and the word "delete" for the petitioner's proper name, falls within the class of statements to which *Bruton*'s protections apply.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

[Typewritten Version of Handwritten Redacted Statement, State's Exhibit 5B]

### (REDACTED STATEMENT)

This is a statement of Anthony Bell, taken on 1-4-94 at 0925 hrs in the small interview room.   Statement taken by Det. Pennington and Det. Ritz.

(Q) Is your name Anthony Bell

(A) Yes

(Q) Are 19 years old and your date of Birth is 6-17-74

(A) Yes

(Q) Can you read and write

(A) Yes

(Q) Are you under the influence of alcohol or drugs

(A) No

(Q) You were explained your Explanation of Rights, do you fully understand them

(A) Yes

(Q) Are you willing to answer questions without an attorney present at this time

(A) Yes

*Anthony Bell*

[Page -2-]

Bell, Anthony·

(Q) Has anyone promised you anything if you answer questions

(A) No

(Q) What can you tell me about the beating of Stacey Williams that occurred on 10 November 1993

(A) An argument broke out between ⬛ and Stacey in the 500 blk of Louden Ave   Stacey got smacked and then ran into Wildwood Parkway.   Me ⬛ , ⬛ and a few other guys ran after Stacey.   We caught up to him on Wild-

wood Parkway. We beat Stacey up. After we beat Stacey up, we walked him back to Louden Ave I then walked over and used the phone. Stacey and the others walked down Louden

(Q) When Stacey was beaten on Wildwood Parkway, how was he beaten

*Anthony Bell*

[Page -3-]

Bell, Anthony

(A) Hit, kicked

(Q) Who hit and kicked Stacey

(A) I hit Stacey, he was kicked but I don't know who kicked him

(Q) Who was in the group that beat Stacey

(A) Me,          ,            and a few other guys

(Q) Do you have the other guys names

(A)          ,            and me, I don't remember who was out there

(Q) Did anyone pick Stacey up and drop him to the ground

(A) No when I was there.

(Q) What was the argument over between Stacey and

*Anthony Bell*

[Page -4-]

Bell, Anthony

(A) Some money that Stacey owed

(Q) How many guys were hitting on Stacey

(A) About six guys

(Q) Do you have a black jacket with Park Heights written on the back

(A) Yeh

(Q) Who else has these jacket.

(A)          ,

(Q) After reading this statement would you sign it
(A) Yes

*Anthony Bell*

Det. William F. Ritz                    Det. Homer Pennington

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE KENNEDY, and JUSTICE THOMAS join, dissenting.

In *Richardson* v. *Marsh,* 481 U. S. 200 (1987), we declined to extend the "narrow exception" of *Bruton* v. *United States,* 391 U. S. 123 (1968), beyond confessions that facially incriminate a defendant. Today the Court "concede[s] that *Richardson* placed outside the scope of *Bruton*'s rule those statements that incriminate inferentially," *ante,* at 195, and "concede[s] that the jury must use inference to connect the statement in this redacted confession with the defendant," *ibid.,* but nonetheless extends *Bruton* to confessions that have been redacted to delete the defendant's name. Because I believe the line drawn in *Richardson* should not be changed, I respectfully dissent.

The almost invariable assumption of the law is that jurors follow their instructions. *Francis* v. *Franklin,* 471 U. S. 307, 324–325, n. 9 (1985). This rule "is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." *Richardson, supra,* at 211. We have held, for example, that the state may introduce evidence of a defendant's prior convictions for the purpose of sentencing enhancement, or statements elicited from a defendant in violation of *Miranda* v. *Arizona,* 384 U. S. 436 (1966), for the purpose of impeachment, so long as the jury is instructed that such evidence may not be considered for the purpose of determining guilt. *Spencer* v. *Texas,* 385 U. S. 554 (1967); *Harris* v. *New York,* 401 U. S. 222 (1971). The same applies to codefendant confessions:

"[A] witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Richardson, supra,* at 206. In *Bruton,* we recognized a "narrow exception" to this rule: "We held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." 481 U. S., at 207.

We declined in *Richardson,* however, to extend *Bruton* to confessions that incriminate only by inference from other evidence. When incrimination is inferential, "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." 481 U. S., at 208. Today the Court struggles to decide whether a confession redacted to omit the defendant's name is incriminating on its face or by inference. On the one hand, the Court "concede[s] that the jury must use inference to connect the statement in this redacted confession with the defendant," *ante,* at 195, but later asserts, on the other hand, that "the redacted confession with the blank prominent on its face . . . '*facially* incriminat[es]'" him, *ante,* at 196. The Court should have stopped with its concession: The statement "Me, deleted, deleted, and a few other guys" does not facially incriminate anyone but the speaker. The Court's analogizing of "deleted" to a physical description that clearly identifies the defendant (which we have assumed *Bruton* covers, see *Harrington* v. *California,* 395 U. S. 250, 253 (1969)) does not survive scrutiny. By "facially incriminating," we have meant incriminating independent of other evidence introduced at trial. *Richardson, supra,* at 208–209. Since the defendant's appearance at counsel table is not evidence, the description "red-haired, bearded, one-eyed man-with-a-limp," *ante,* at 195, would be facially incriminating—unless, of course, the defendant had dyed his hair black and shaved

his beard before trial, and the prosecution introduced evidence concerning his former appearance. Similarly, the statement "Me, Kevin Gray, and a few other guys" would be facially incriminating, unless the defendant's name set forth in the indictment was not Kevin Gray, and evidence was introduced to the effect that he sometimes used "Kevin Gray" as an alias. By contrast, the person to whom "deleted" refers in "Me, deleted, deleted, and a few other guys" is not apparent from anything the jury knows independent of the evidence at trial. Though the jury may speculate, the statement expressly implicates no one but the speaker.

Of course the Court is correct that confessions redacted to omit the defendant's name are more likely to incriminate than confessions redacted to omit any reference to his existence. But it is also true—and more relevant here—that confessions redacted to omit the defendant's name are *less* likely to incriminate than confessions that expressly state it. The latter are "powerfully incriminating" as a class, *Bruton, supra,* at 124, n. 1, 135; the former are not so. Here, for instance, there were two names deleted, five or more participants in the crime, and only one other defendant on trial. The jury no doubt may "speculate about the reference," *ante,* at 193, as it speculates when evidence connects a defendant to a confession that does not refer to his existence. The issue, however, is not whether the confession incriminated petitioner, but whether the incrimination is so "powerful" that we must depart from the normal presumption that the jury follows its instructions. *Richardson, supra,* at 208, n. 3. I think it is not—and I am certain that drawing the line for departing from the ordinary rule at the *facial identification* of the defendant makes more sense than drawing it anywhere else.

The Court's extension of *Bruton* to name-redacted confessions "as a class" will seriously compromise "society's compelling interest in finding, convicting, and punishing those who violate the law." *Moran* v. *Burbine,* 475 U. S. 412, 426

(1986) (citation omitted). We explained in *Richardson* that forgoing use of codefendant confessions or joint trials was "too high" a price to ensure that juries never disregard their instructions. 481 U. S., at 209–210. The Court minimizes the damage that it does by suggesting that "[a]dditional redaction of a confession that uses a blank space, the word 'delete,' or a symbol . . . normally is possible." In the present case, it asks, why could the police officer not have testified that Bell's answer was "Me and a few other guys"? *Ante*, at 196. The answer, it seems obvious to me, is because that is not what Bell said. Bell's answer was "Me, Tank, Kevin and a few other guys." Introducing the statement with full disclosure of deletions is one thing; introducing as the complete statement what was in fact only a part is something else. And of course even concealed deletions from the text will often not do the job that the Court demands. For inchoate offenses—conspiracy in particular—redaction to delete all reference to a confederate would often render the confession nonsensical. If the question was "Who agreed to beat Stacey?", and the answer was "Me and Kevin," we might redact the answer to "Me and [deleted]," or perhaps to "Me and somebody else," but surely not to just "Me"—for that would no longer be a confession to the conspiracy charge, but rather the foundation for an insanity defense. To my knowledge we have never before endorsed—and to my strong belief we ought not endorse—the redaction of a statement by some means other than the deletion of certain words, with the fact of the deletion shown.[1] The risk to the integrity of our system (not to mention the increase in its complexity) posed by the approval of such

---

[1] The Court is mistaken to suggest that in *Richardson* v. *Marsh*, 481 U. S. 200 (1987), we endorsed rewriting confessions as a proper method of redaction. See *ante*, at 197. There the parties agreed to the method of redaction, App. in *Richardson* v. *Marsh*, O. T. 1986, No. 85–1433, pp. 100, 107–108, and we had no occasion to address the propriety of editing confessions without showing the nature of the editing.

freelance editing seems to me infinitely greater than the risk posed by the entirely honest reproduction that the Court disapproves.

The United States Constitution guarantees, not a perfect system of criminal justice (as to which there can be considerable disagreement), but a minimum standard of fairness. Lest we lose sight of the forest for the trees, it should be borne in mind that federal and state rules of criminal procedure—which can afford to seek perfection because they can be more readily changed—exclude nontestifying-codefendant confessions even where the Sixth Amendment does not. Under the Federal Rules of Criminal Procedure (and Maryland's), a trial court may order separate trials if joinder will prejudice a defendant. See Fed. Rule Crim. Proc. 14; Md. Crim. Rule 4–253(c) (1998). Maryland courts have described the term "prejudice" as a "term of art," which "refers only to prejudice resulting to the defendant from the reception of evidence that would have been inadmissible against that defendant had there been no joinder." *Ogonowski* v. *State*, 589 A. 2d 513, 520, cert. denied, 593 A. 2d 1127 (1991). The Federal Rule expressly contemplates that in ruling on a severance motion the court will inspect *"in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial." Fed. Rule Crim. Proc. 14. Federal and most state trial courts (including Maryland's) also have the discretion to exclude unfairly prejudicial (albeit probative) evidence. Fed. Rule Evid. 403; Md. Rule Evid. 5–403 (1998). Here, petitioner moved for a severance on the ground that the admission of Bell's confession would be unfairly prejudicial. The trial court denied the motion, explaining that where a confession names two others, and the evidence is that five or six others participated, redaction of petitioner's name would not leave the jury with the "unavoidable inference" that Bell implicated Gray. App. 8.

I do not understand the Court to disagree that the redaction itself left unclear to whom the blank referred.[2]   See *ante*, at 194–195.   That being so, the rule set forth in *Richardson* applies, and the statement could constitutionally be admitted with limiting instruction.   This remains, insofar as the Sixth Amendment is concerned, the most "reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."   *Richardson*, 481 U. S., at 211.   For these reasons, I would affirm the judgment of the Court of Appeals of Maryland.

---

[2] The Court does believe, however, that the answer to a "followup question"—"All right, now, officer, after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray; is that correct?" ("That's correct")—"eliminated all doubt" as to the subject of the redaction.   *Ante,* at 189, 194.   That is probably not so, and is certainly far from clear.   Testimony that preceded the introduction of Bell's confession had already established that Gray had become a suspect in the case, and that a warrant had been issued for his arrest, *before Bell confessed.*   Brief for Respondent 26, n. 10.   Respondent contends that, given this trial background, and in its context, the prosecutor's question did not imply any connection between Bell's confession and Gray's arrest, and was simply a means of making the transition from Bell's statement to the next piece of evidence, Gray's statement.   *Ibid.*   That is at least arguable, and an appellate court is in a poor position to resolve such a contextual question *de novo.*   That is why objections to trial testimony are supposed to be made *at the time*— so that trial judges, who hear the testimony in full, live context, can make such determinations in the first instance.   But if the question *did* bring the redaction home to the defendant, surely that shows the impropriety of the question rather than of the redaction—*and the question was not objected to.*   The failure to object deprives petitioner of the right to complain of some incremental identifiability added to the redacted statement by the question and answer.   Of course the Court's reliance upon this testimony belies its contention that name-redacted confessions are powerfully incriminating "as a class," *ante,* at 195.