**UNITED STATES of America,**
**Appellee,**

v.

**Paul Okechukwu EZEH, Defendant,**

**Emmanuel Eke UFOMADUH, also**
**known as "Joseph Austin,"**
**Defendant–Appellant.**

**No. 03–1184.**

United States Court of Appeals,
Second Circuit.

March 15, 2004.

Larry Sheehan, Scarsdale, NY, for Appellant.

E. Danya Perry, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Gary Stein, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

PRESENT: WALKER, Chief Judge, CARDAMONE, and KEITH,* Circuit Judges.

## SUMMARY ORDER

■ Defendant-appellant Emmanuel Eke Ufomaduh appeals from the February 26, 2003 judgment of the district court convicting him, following a jury trial, of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Ufomaduh was sentenced to fifteen months' imprisonment, to be followed by three years of supervised release. In addition, he was ordered to pay a $5,500 fine and a $100 special assessment.

On appeal, Ufomaduh argues that (1) the district court erred in denying his motion to sever his trial from that of co-defendant Paul Okechukwu Ezeh; (2) Ufomaduh's Sixth Amendment confrontation rights were violated by the admission of post-arrest statements made by Ezeh, who did not testify at trial; and (3) there was

---

* The Honorable Damon J. Keith, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

insufficient evidence to support Ufomaduh's conviction.

We address the latter issue first because it bears on the other two. To sustain his heavy burden in challenging the sufficiency of the evidence, Ufomaduh must establish that no "rational trier of fact could have found the essential elements of the crime [for which he was convicted] beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To review this claim, we "assess the evidence [admitted at trial] in the light most favorable to the government." *United States v. Berger,* 224 F.3d 107, 116 (2d Cir.2000). Applying this standard, the government's proof at trial would have allowed the jury to find that in May 2002, Bobbie Jean Chavez was contacted by e-mail by someone claiming to be a Nigerian "attorney" overseeing the disposition of a $6 million estate of one "Hans Chavez." Chavez was told that if she would claim to be the decedent's sister, the "attorney" would be able to transfer the money to the United States and would give her 40% of it. The attorney convinced her that in order to complete the transaction, she would have to go to New York, present identification to one "Joseph Austin," and pay him a $5,500 fee in order to clean the money, which would be painted black so that it could be smuggled out of Nigeria. On May 15, 2002, Chavez, now in New York, was contacted by "Joseph Austin," who told her to meet him at the Skybox Bar and Grill. Later that day, Ufomaduh met Chavez and an undercover agent posing as her husband at the restaurant and introduced himself as "Joseph Austin." He asked her for the $5,500 fee and, after she gave it to him, handed her a receipt signed by "Joseph Austin." Ufomaduh was immediately arrested, as was Ezeh, who had entered the restaurant prior to Ufomaduh to ascertain if Chavez was present. Given that "only slight evidence is required to link [a] defendant [to] a conspiracy once the conspiracy has been shown to exist," *United States v. Aleskerova,* 300 F.3d 286, 292 (2d Cir.2002), we easily conclude that the government presented more than sufficient evidence to establish Ufomaduh's participation in the "black money" scheme.

■ Next, Ufomaduh claims that the District Court erred in denying his motion to sever his trial from that of co-defendant Ezeh. Prior to trial, Ufomaduh sought severance on the ground that he would be unfairly prejudiced by the admission into evidence of Ezeh's prior conviction for a similar "black money" scheme and the government's proposed redacted version of Ezeh's post-arrest statements, which asserted that Ezeh was aware that a black money scheme was taking place in the Skybox restaurant, that he was acting as a driver for one of the participants, and that he was aware that one of the participants was named "Tony." The proposed statement did not mention Ufomaduh by name and the name "Tony" apparently referred to a third participant in the scheme. Ufomaduh argues that the denial of severance coupled with the admission of the statement and Ezeh's prior conviction for the same crime violated his right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. *See Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (holding that admission of confession directly inculpating codefendant in joint trial violated co-defendant's confrontation rights).

Rule 14 of the Federal Rules of Criminal Procedure permits a district court to "sever ... defendants' trials" if "joinder of ... defendants ... appears to prejudice a defendant." As the Supreme Court has made clear, however, "Rule 14 does not require severance even if prejudice is

shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States,* 506 U.S. 534, 538–39, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Thus, a district court order denying a Rule 14 motion is considered "virtually unreviewable" and will be overturned "only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion," *United States v. Diaz,* 176 F.3d 52, 102 (2d Cir.1999) (internal quotation marks and citation omitted).

Within this framework, the fashioning of remedial steps to minimize prejudice to a defendant is also committed to the sound discretion of the district court. *See Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. Various remedies short of severance are available to the district court, including, inter alia, issuing limiting instructions to the jury, empaneling separate juries, or redacting out-of-court statements that refer to a co-defendant by name. Such redactions are permissible so long as the redaction does not distort the statements' meaning, exclude substantially exculpatory information, or change "the tenor of the utterance as a whole." *United States v. Alvarado,* 882 F.2d 645, 651 (2d Cir.1989) (internal quotation marks and citation omitted), *overruled on other grounds, Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *see also United States v. Castro,* 813 F.2d 571, 576 (2d Cir.1987). In this case, the district court permitted the introduction of a redacted version of Ezeh's post-arrest statement that, standing by itself, neither implicated Ufomaduh nor made the fact of redaction obvious, thereby meeting the requirements set forth in *Gray v. Maryland,* 523 U.S. 185, 192–93, 196, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) (holding that Bruton may be violated if the fact of redaction is obvious). Moreover, Ufomaduh has "not articulate[d] any specific instances of prejudice ... of the type that [could not] be cured with proper instructions." *Zafiro,* 506 U.S. at 539–40, 113 S.Ct. 933. Thus, admission of the redacted statement did not violate the *Bruton* doctrine and was not an abuse of discretion. *See Gray,* 523 U.S. at 192, 118 S.Ct. 1151.

As Ufomaduh points out, however, several incidents during the trial itself do raise the possibility of prejudice. The first incident occurred when a government agent testified that Ezeh stated he was present at the restaurant to help Ufomaduh—rather than just an unnamed participant—in the scheme. Although the government sought to correct the error by trying to elicit from the agent that he meant only that Ezeh was helping Ufomaduh as a driver, the agent reiterated that Ezeh also stated he was helping Ufomaduh with the scheme. Testimony from other agents compounded the error by establishing that Ezeh was driving Ufomaduh in furtherance of the scheme and by making clear that the various agents' recitations of Ezeh's statements were restricted by court order.

While these incidents should have been avoided by the government, we need not decide what, if any, effect they may have had on the jury's deliberations. The district court instructed the jury after the testimony and again at the close of trial that

> [i]nsofar as Mr. Ezeh's statements concerning Mr. Ufomaduh, the only statement of Mr. Ezeh that you may consider with respect to Mr. Ufomaduh is that Mr. Ezeh served as a driver for Mr. Ufomaduh. That is an instruction that I gave you earlier in the trial, I give it again so that you can take it with you into the jury room. And I would repeat

it. The only statement that Mr. Ezeh made that you can consider concerning Mr. Ufomaduh is his statement that he, Mr. Ezeh, served as a driver for Mr. Ufomaduh.

We believe it likely that these "instructions sufficed to cure any possibility of prejudice" from the admission of Ezeh's statement. *Zafiro,* 506 U.S. at 541; *see also United States v. Yousef,* 327 F.3d 56, 149–51 (2d Cir.2003). But even if prejudice nevertheless resulted, we conclude that it was harmless as a matter of law in light of the overwhelming independent evidence of Ufomaduh's guilt. *See United States v. Kirsh,* 54 F.3d 1062, 1068 (2d Cir.1995) (no reversal required for *Bruton* violation where prejudice insignificant in light of overwhelming evidence of guilt); *United States v. Williams,* 927 F.2d 95, 99 (2d Cir.1991) (harmless error analysis applies to Bruton violations). Accordingly, we conclude that Ufomaduh has failed to "show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion [for severance] constituted an abuse of discretion." *Diaz,* 176 F.3d at 102 (internal quotation marks and citation omitted).

Having thoroughly considered appellant's remaining arguments and the record below, we find no error in the district court's rulings. Accordingly, the judgment of the district court is hereby AFFIRMED.