Pigott, J.
(dissenting). The primary issue in this case boils down to whether codefendant Villanueva’s redacted statement “obviously refers to the defendant” (Gray v Maryland, 523 US 185, 194 [1998]). The majority holds that it does. I disagree.
A redacted statement of a non-testifying codefendant cannot be admitted at a defendant’s joint trial if the redaction “so closely resemble [s] ” the facially incriminating statements prohibited by Bruton v United States (391 US 123 [1968]) that the jury cannot refrain from attributing it to the defendant (Gray, 523 US at 192). Redactions that simply “replace[ ] a defendant’s name with an obvious indication of deletion, such as a blank space, the word ‘deleted,’ or a similar symbol,” generally fall within this rule (id.). However, it is not the case that every redacted statement containing blank spaces or signs of deletion must be excluded. If a redaction sufficiently conceals the person to whom the blank spaces refer, the statement may be admitted with proper limiting instructions (id. at 194).
Villanueva’s redacted statement, read to the jury by Detective Moser without objection, provided in pertinent part:
“Then all of a sudden one of the Latin Kings pulled out a knife and rushed the whole crowd. One of the *124 Trinitarios asked me, are you with them? I said, no. Then they started throwing bottles. There was a commotion on the platform and I started running after them. I moved to the back of the car. The Latin Kings were there. That’s when . . . [o]ne male pulled out a black knife. He went out of the train. Then I looked out of the car and observed him striking the victim with the knife. The victim was bleeding. The same Latin King . . . [r]an over to the victim and started punching him with a small knife. Cops came back up on to the platform and found the victim on the floor. Then more police showed up.”
No one suggested that this statement “obviously refer [red] to the defendant” (Gray, 523 US at 194). The identical statement was introduced into evidence in written form. On paper, it read:
“[T]hen all the sudden one of the Latin Kings pulled out a knife and rushed the whole crowd. One of the Trin [it] arios asked me are you with them I said no, then they started throwing bottles, there was a cop on the platform and he started running after them. I moved to the back of the car the Latin Kings were there that’s when the one with male pulled out a black knife he went out of the train, then I looked out the car and observed him striking the victim with the knife. The victim was bleeding the same Latin King ran over to the victim and starting punching him with a small knife, the cop came back up onto the platform and found the victim on the floor, then more police showed up.”
Although the redacted statement contained blank spaces and clear signs of alteration, it “would not have caused the jurors to ‘realize that the confession refers specifically to the defendant’ ” (People v Cedeno, 113 AD3d 695, 697 [2d Dept 2014], quoting Gray, 523 US at 193). The statement revealed only that one Latin Kang pulled out a knife and punched the victim, while another attacked him with a knife. But there were four Latin Kings at the defense table, of whom Villanueva was one. Thus, even if Villanueva’s redacted statement “implicated a specific Latin King” (majority op at 120), it is not at all clear which Latin King it implicated — defendant, Casares, Tineo, one of the participants who pleaded guilty before trial, or yet *125 another person who may have escaped in the mayhem (see Gray, 523 US at 195 [noting that the blank spaces in a redacted statement may not clearly refer to a defendant where the statement “uses two (or more) blanks, even though only one other defendant appears at trial, and in which the trial indicates that there are more participants than the confession has named”]). A juror wondering to whom the statement might refer would need to do much more than “lift his [or her] eyes” to counsel’s table to determine “what [would] seem the obvious answer” (majority op at 120, quoting Gray, 523 US at 193). He or she would first need to link the statement with other evidence presented at trial and draw inferences based on that evidence in order to conclude that defendant may have been involved. Where such inference and linkage is required, Bruton does not apply.[1]
The Second Circuit’s recent decision in Jass supports this conclusion (United States v Jass, 569 F3d 47 [2d Cir 2009]). Defendant Jass and codefendant Leight were charged with several counts of criminal sexual activity with a child. After his arrest, Leight had made a statement to the authorities that “he and Jass [had taken] [the victim] to [a] mall [in New Jersey]” and, after they went shopping they took the victim to a hotel and performed multiple sexual acts with her (id. at 52). At trial, an FBI agent testified to a redacted account of Leight’s post-arrest admissions, substituting the phrase “another person,” “the other person” and “we” wherever Leight had previously identified the defendant. Thus, as redacted, the agent testified that “Mr. Leight told me that he and another person had taken [Victim 2] to the Rockaway Mall in New Jersey,” that “he and the other person and [Victim 2] returned back to *126 the hotel,” that “Mr. Leight stated to me that [Victim 2] kissed him and the other person,” etc. {id. at 53).
The trial court admitted these redacted statements with a limiting instruction to consider them only as evidence against Leight.[2] Defendant was convicted and claimed on appeal that the redactions facially implicated her in the crime. The Second Circuit disagreed, and held that no Sixth Amendment violation occurred because “it would not have been immediately apparent to a jury that heard only [the codefendant]’s redacted references to ‘another person’ that he was specifically inculpating [defendant] in the abuse of [the victim]. The ‘other person’ could have been anyone” {id. at 62 [emphasis added]). The Second Circuit reached this conclusion, notwithstanding the fact that Leight’s statements incriminated only one other person, and that Jass was the only other defendant at trial.
Like the testimony admitted in Jass, it was not immediately apparent to the jury that defendant was either the “Latin King” or the “male” inculpated in the redacted statement. Any of the Latin Kings Villanueva described at the subway station fit that description, as well as the three defendants on trial with him. Because there is nothing in Villanueva’s redacted statement that identified, let alone “powerfully incriminat[ed]” (Bruton, 391 US at 135) defendant as one of the perpetrators of the crime, and none of defendant’s remaining arguments warrants reversal, I would affirm.
Chief Judge DiFiore and Judges Rivera, Abdus-Salaam and Fahey concur; Judge Pigott dissents in an opinion in which Judge Garcia concurs.
Order reversed and a new trial ordered.

. I question whether Villanueva’s statement even falls within Bruton’s protections since it did not identify defendant by name or specific description. It identified him only by an article of clothing, when it said that “one of the Latin Kings wearing red & white trunks pulled out a knife and rushed the whole crowd.” That fact alone makes this statement substantively different from the ones at issue in Bruton and Gray, which directly identified the defendant by name (see Bruton, 391 US at 124; Gray, 523 US at 192), as well as the statement in Harrington v California, which identified the defendant as a “white guy” and gave a description of his age, height, weight and hair color (395 US 250, 253 [1969]). Although the Court in Gray said that “nicknames and specific descriptions” fall within Bruton’s scope, it has yet to apply a Bruton analysis to a statement like Villanueva’s that identifies the defendant only by brief reference to the color of his shorts (id. at 195 [emphasis added]).

. The trial court in this case did not instruct the jury to use the redacted statement only against codefendant Villanueva, but defendant did not object to the court’s instruction and does not challenge it here. Therefore, the adequacy of the court’s charge in the context of the alleged Bruton error is not before us (see People v Hawkins, 11 NY3d 484, 491-492 [2008]).