**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-5245

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NICK HALTEH,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CR-05-68)

Argued: January 31, 2007                    Decided: March 15, 2007

Before WILKINS, Chief Judge, and WILLIAMS and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John Cady Kiyonaga, KIYONAGA & KIYONAGA, Alexandria, Virginia, for Appellant. Olivia Rose Hussey, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Jonathan L. Fahey, Assistant United States Attorney, Michael Davis, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is an appeal from a conviction for conspiracy to obstruct interstate commerce by robbery, in violation of 18 U.S.C. § 1951, and using a firearm in furtherance of the conspiracy, in violation of 18 U.S.C. §§ 2 and 924(c)(1). Appellant Nick Halteh ("Appellant") argues that the district court erred in suppressing evidence of his prior acquittal in state court of charges relating to a robbery at issue in the federal proceeding and by denying his motion for a mistrial when the government elicited evidence from a witness concerning Appellant's gang affiliation. For the reasons that follow, we find no error in the district court's rulings on these issues.

Appellant further contends that his Sixth Amendment right to confrontation was violated in two respects: (1) by admission of a 911 call in contravention of Crawford v. Washington, 541 U.S. 36, 53-54 (2004) and (2) by admission of the statements of his nontestifying codefendant, in which references to Appellant were redacted and replaced with neutral pronouns. Because both the caller and the operator involved in the admitted 911 call testified in Appellant's trial, giving him the opportunity to confront them, we find that Crawford is not implicated. Additionally, the statements of Appellant's nontestifying codefendant were appropriately redacted and the jury instructed to consider these

only against Appellant's codefendant. We therefore affirm Appellant's conviction.

# I.

Appellant and Joshua Fritter were tried jointly for crimes relating to a conspiracy that resulted in three robberies of drug dealers within a ten-day span. In the first robbery, Appellant planned to rob Christopher Campero, a marijuana dealer, and recruited other men to help him. On the date of the robbery, Appellant, Milton Jurardo, and another friend entered Campero's home, where Campero was sleeping. Jurardo bludgeoned Campero to death with a crow bar, and the three intruders ransacked the home for marijuana. Campero's mother discovered her son's body upon her return to the home. Mrs. Campero called 911 to report the murder, describing the battered body and the blood-spattered state of the room. Mrs. Campero testified at trial, and the tape of her 911 call was played for the jury. The 911 operator testified as well. Appellant did not cross-examine either the mother or the operator.

In the second robbery, Appellant and four others entered marijuana-dealer Chi Hoon Han's home. Appellant beat Han with a BB gun and stole valuables from his home.

In the third robbery, Appellant, Jurardo, and Pierre Alvarez planned a marijuana deal with dealer Siro Alexander Hernandez. At Jurardo's suggestion, the three picked up a real gun from his uncle

- 3 -

before the meeting. Appellant inspected the gun, which the conspirators planned to use along with the BB gun Appellant had used to beat Han. At the meeting, Hernandez got into a car with the three conspirators, sitting in the back seat next to Jurardo. When Hernandez stopped complying with instructions from the three, however, Jurardo fired the gun at him. Alvarez punched and dragged Hernandez from the car. Jurardo then shot Hernandez execution-style, which miraculously did not kill him. Appellant, Jurardo, and Alvarez then torched the car, which had been damaged and bloodied during the altercation.

Appellant was arrested and charged in Virginia state court with, inter alia, the aggravated malicious wounding of Hernandez. The state charges related only to crimes involving Hernandez, the third victim of Appellant's crime spree that underpins the federal conspiracy charges. While in jail awaiting his state-court trial, Appellant wrote a letter to Fritter urging him to offer Hernandez a bribe to drop the charges against him and to threaten Hernandez's life. Appellant was ultimately acquitted of the state charges. Fritter, however, turned the letter over to police, and it was admitted into evidence in the federal prosecution.

Appellant was later arrested, along with Fritter and Alvarez, and charged with conspiring to affect interstate commerce by robbery, in violation of 18 U.S.C. § 1951, and using a firearm in furtherance of the conspiracy, in violation of 18 U.S.C. §§ 2 and

- 4 -

924(c)(1). Alvarez entered into a plea agreement with the government.

Before the trial of Appellant and Fritter, the government moved in limine to exclude reference to Appellant's acquittal of the state charges. The district court granted the motion, directing the parties to refer to the state proceedings as "another proceedings [sic] related to this case" or "another hearing in connection with this case," and barring any reference to Appellant's acquittal. J.A. 357.

Nevertheless, at trial a government witness referred to the state proceedings as a "previous hearing," not using the exact phrasing as directed by the court. J.A. 1499. Appellant did not object to this phrasing at trial. Later, the government sought to introduce tapes of telephone conversations made by Appellant while he was in jail awaiting trial on the state charges. In laying the foundation for introducing the tapes, the government asked a jailer-witness if Appellant was an inmate at the jail. Appellant objected after the entire foundation was laid, arguing that he would be prejudiced if the jury knew he was in jail but never learned that he was acquitted of those charges. The district court overruled the objection.

The district court also granted Appellant's motion in limine to exclude reference to Appellant's gang membership, declaring it unduly prejudicial. Nevertheless, at trial the government asked

Jurardo, called by the United States as a witness, a question to which Jurardo's response revealed that Appellant was a member of a street gang. Appellant moved for a mistrial. The district court immediately admonished the government and issued a curative instruction to the jury, telling jurors "to disregard entirely the witness'[s] statement." J.A. 1431. The district court denied Appellant's motion for a mistrial.

Finally, the district court admitted the out-of-court statements regarding the charged crimes that Fritter had made to a detective. The district court did, however, require that the statements be redacted to supplant references to Appellant with neutral pronouns (i.e., "friend" or "individual"). J.A. 1495, 1497. In its final jury instructions, the district court instructed the jury not to consider Fritter's statements in the case against Appellant, but rather only to consider them against Fritter himself.

The jury returned a verdict convicting Appellant on both counts and acquitting Fritter. Appellant now appeals, making three arguments which we consider in turn.

## II.

We first consider Appellant's argument that the district court erred in suppressing evidence of his acquittal on state charges relating to the robbery and attempted murder of Hernandez. As

- 6 -

noted above, Appellant was tried and acquitted in Virginia state court for the aggravated malicious wounding of Hernandez and sought to introduce this evidence in his federal trial on conspiracy charges relating not only to the robbery and attempted murder of Hernandez but also to two other incidents.

We review the district court's evidentiary rulings for abuse of discretion. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). Although the Fourth Circuit has never specifically addressed the admissibility of a verdict of acquittal in a prior state proceeding relating to the same conduct at issue in a federal proceeding, doing so requires a straightforward application of the rules governing the admissibility of evidence generally. Such rules, of course, include an assessment of whether the risk of confusion of the issues from evidence's introduction substantially outweighs its probative value. See Fed. R. Evid. 403. Several other circuits to have confronted this precise evidentiary question have upheld a lower court's exercise of its discretion to exclude a verdict of acquittal in a prior state proceeding. See, e.g., United States v. Smith, 145 F.3d 458, 462 (1st Cir. 1998); United States v. Tirrell, 120 F.3d 670, 678 (7th Cir. 1997); United States v. Riley, 684 F.2d 542, 546 (8th Cir. 1982). We are aware of no case, and Appellant cites to none, in which a court held such an exclusion to be an abuse of discretion.

Rather, the courts in the opinions cited above have concluded that the district courts did not abuse their discretion in excluding evidence of an acquittal, reasoning that the fact of acquittal on a different charge arising out of the same criminal conduct is simply not relevant to a later trial on another charged crime.  See, e.g., Tirrell, 120 F.3d at 678; Riley, 684 F.2d at 546.  A prior acquittal, especially when the elements of the charged crimes are different, does not tend to prove innocence.  Additionally, the limited probative value of an acquittal on prior charges relating to the same conduct at issue in a later trial may be substantially outweighed by the danger of unfair prejudice or jury confusion.  See Fed. R. Evid. 403; United States v. Kerley, 643 F.2d 299, 300-01 (5th Cir. 1981).  We are unpersuaded that the district court abused its discretion in so concluding here.

Appellant argues further that even if the district court's initial decision to exclude the evidence of his state-court acquittal was appropriate, the government "opened the door" to this evidence at two points during the trial: (1) when a witness referred to "a previous hearing" rather than the using the exact language the district court had prescribed for referring to the relevant state court proceedings and (2) when evidence revealed that Appellant had been in jail.

Our precedent is clear that otherwise inadmissible evidence may be permitted for the limited purpose of removing any unfair

prejudice injected by an opposing party's "open[ing] the door" on an issue. United States v. Higgs, 353 F.3d 281, 329-30 (4th Cir. 2003). Such rebuttal evidence "must be reasonably tailored to the evidence it seeks to refute," and its admission or exclusion, like all evidentiary rulings, is "addressed to the sound discretion of the trial judge." United States v. Stitt, 250 F.3d 878, 896-97 (4th Cir. 2001).

For example, in Higgs, the defendant offered as mitigating evidence testimony that he was a model prisoner and that he was working to establish a positive relationship with his son. 353 F.3d at 329. In rebuttal, the government was permitted to introduce otherwise inadmissible evidence of the defendant's prison infractions. Id. The district court instructed the jury that such rebuttal evidence was only to be considered for the limited purpose of rebutting the defendant's mitigating evidence. Id. at 330.

We hold here, however, that the district court did not abuse its discretion in refusing to admit evidence of Appellant's acquittal after the government introduced the evidence described above. We fail to see how the government witness's reference to "a previous hearing" rather than "another hearing in connection with this case"--a reference to which Appellant did not object at trial--bears the potential to prejudice Appellant. Furthermore, we find no abuse of discretion in the district court's overruling Appellant's objection to the evidence that he had previously been

in jail, which objection was lodged only after a foundation for that evidence had been laid. Appellant's objection to this evidence was not that it was prejudicial but rather that it was not accompanied by evidence that he was acquitted. See J.A. 1469-70. Given the tardiness and limited scope of Appellant's objection, we find no abuse of discretion in the district court's overruling it. The district court could have reasonably concluded that such additional evidence was not "reasonably tailored" to the evidence it sought to explain, that Appellant was incarcerated at one time in the past. Stitt, 250 F.3d at 897.

Finding no error in the district court's exclusion of evidence of Appellant's state-court acquittal on charges relating to the robbery and attempted murder of Hernandez, we now turn to Appellant's argument that his motion for a mistrial was improperly denied.


III.

Appellant next argues that a government witness's mention of his gang affiliation required that a mistrial be declared and that the district court erred in denying his motion for a mistrial. The denial of a motion for mistrial is reviewed for abuse of discretion. United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997). The reversal of a district court's denial of a motion for a mistrial is only warranted when there is a "reasonable

possibility that the jury's verdict was influenced by . . . improper[] . . . material." <u>United States v. Seeright</u>, 978 F.2d 842, 849 (4th Cir. 1992) (internal quotations omitted).

Prior to trial, the district court granted Appellant's motion to suppress reference to a gang to which Appellant and Fritter allegedly belonged, because none of the charges related to gang activity. Here, however, the government was not the first party to introduce the specter of gang involvement. In his opening statement, Appellant's counsel referred to the victim Campero's alleged membership in the same gang to which Appellant and Fritter allegedly belonged. Next, Fritter's counsel cross-examined the witness Jurardo about gang involvement without objection by Appellant. It was not until redirect examination of Jurardo that the government elicited a response that both Appellant and Fritter were members of a gang. At this point, Appellant moved for a mistrial. The district court reprimanded the government, denied the motion, and issued an immediate curative instruction to the jury:

> Ladies and gentlemen, just a moment ago, Mr. Jurardo made a statement and I want to address it right away. And, I instruct you as follows . . . . First, there is no evidence in this case that either Mr. Nick Halteh or Mr. Joshua Fritter were members of any gang. And there is no evidence that any of the actions alleged in the indictment are in any way gang[-]related. You are instructed to disregard entirely the witness'[s] statement that Mr. Halteh and Mr. Fritter were members of any gang. This is not a gang case.

J.A. 1430-31.   At the end of the trial, the district court reiterated that "the defendants are not on trial for any act or conduct not specifically charged in the indictment."  J.A. 1699.

The government maintains that its questioning of Jurardo in this regard was appropriate, because the codefendants opened the door by using evidence about gangs to place the victims and witnesses in a negative light as compared to the codefendants.  We need not reach that issue, however, because of our conclusion that any error in the government's eliciting of testimony about Appellant's gang membership was harmless.

In reaching that conclusion, we rely on the three-factor framework introduced in United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980), examining (1) the closeness of the case; (2) the centrality of the issue affected by the error; and (3) the district court's mitigating steps.  Id.  Here, we find that all three factors weigh in favor of denying the motion for a mistrial.

First, this case was not close.  The evidence against Appellant, including physical evidence and his letter to Fritter from jail, was substantial.  Second, gang membership was not a central issue in the case; it was, at most, a tangential matter. Appellant was not charged with gang activity.  Indeed, the fact that Fritter was acquitted despite mention that he, too, was a gang member supports our conclusion that the jury was able to consider the evidence underlying the conspiracy charges independently from

the taint of the gang-affiliation comment. Finally, the district court immediately chastised the government for eliciting the testimony regarding Appellant's and Fritter's gang affiliations and issued curative jury instructions. We therefore conclude that the district court did not abuse its discretion in denying Appellant's motion for a mistrial.

IV.

Finally, Appellant argues that his rights under the Confrontation Clause of the Sixth Amendment were violated by the admission of (1) a transcript of Campero's mother's 911 call and (2) the statements of his nontestifying codefendant Fritter. Alleged Confrontation Clause violations are legal issues we review de novo. United States v. Rivera, 412 F.3d 562, 566 (4th Cir. 2005).

A.

The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford, 541 U.S. at 53-54. A 911 call, the "primary purpose [of which] was to enable police assistance to meet an ongoing emergency," is admissible over a Confrontation Clause challenge, because it is considered nontestimonial. Davis v. Washington, 126 S. Ct. 2266, 2277 (2006).

The Supreme Court suggested, however, that portions of 911 calls may be testimonial, as where an emergency situation is neutralized and a caller's statements "evolve into testimon[y]." Id. at 2277. Because both Campero's mother and the 911 operator testified at Appellant's trial, however, we need not reach the issue of when a 911 call becomes testimonial.

Crawford's holding explicitly applies only to "[t]estimonial statements of witnesses absent from trial" for which no prior opportunity to cross-examine was available. See Crawford, 541 U.S. at 59 (emphasis added). Appellant's argument that Crawford requires exclusion of the 911 call even though both the caller and operator appeared at trial is untenable. A Confrontation Clause violation does not occur when the witness is before the court and subject to cross-examination about her prior testimonial statement. That a defendant opts not to cross-examine the witness does not compel a different conclusion. Even if part of the 911 call at issue could be considered testimonial under Crawford and Davis, and we express no opinion on that point, the appearance of both the caller and the 911 operator as trial witnesses available for cross-examination negated any Confrontation Clause violation that could flow from its admission.

B.

We turn now to Appellant's contention that the admitted out-of-court statements of the nontestifying codefendant Fritter also

- 14 -

violated Appellant's Confrontation Clause rights. Fritter gave several statements to a police detective that corroborated evidence against Appellant and himself. The district court permitted these statements to be admitted into evidence with Appellant's name redacted and replaced with neutral pronouns. Fritter's out-of-court statements were discussed at the following points of the trial: Fritter's cross-examination of Jurardo; Appellant's cross-examination of the detective to which the statements were given; and in both the government's and Fritter's closing arguments. The statements noted that a "friend" had a stash of marijuana just after the Campero murder, and that Fritter surmised that "maybe this individual had something to do with the murder." J.A. 1495. Fritter's out-of-court statements also revealed that an "individual told him that he had pistol[-]whipped . . . [an] Asian kid." J.A. 1497-98. The jury did not see copies of Fritter's statements, nor were they told of any modifications to them. Furthermore, the district court issued instructions advising that jurors "may not in any way . . . consider the alleged statements of the defendant, Mr. Joshua Fritter when evaluating the case against Mr. Nick Halteh and determining whether the government has proven the charges against Mr. Halteh." J.A. 1684-85.

The seminal case of <u>Bruton v. United States</u>, 391 U.S. 123 (1968), prohibits admission of a statement of a nontestifying codefendant "if it could be fairly understood to incriminate the

accused." United States v. Campbell, 935 F.2d 39, 43 (4th Cir. 1991). However, if a nontestifying codefendant's statement is redacted to eliminate any reference to the defendant, Richardson v. Marsh, 481 U.S. 200, 211 (1987), or if "the defendant's name is replaced by a symbol or neutral pronoun," United States v. Vogt, 910 F.2d 1184, 1191-92 (4th Cir. 1990), such statement is admissible. If a proffered statement of one nontestifying codefendant becomes incriminating against another by virtue of an inference from other evidence at trial, the Confrontation Clause may not be offended if those statements are redacted and a proper limiting jury instruction is given. Richardson, 481 U.S. at 208-09; see also United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994).

On the other hand, redactions that obviously identify the defendant, even without naming him, effect a constitutional violation that cannot be cured by a jury instruction. See Gray v. Maryland, 523 U.S. 185, 195-96 (1998). Gray differentiates between statements that incriminate by inference or only when linked with later evidence and those that obviously refer to a particular person or involve inferences a jury could make even without additional evidence. Id. at 196. Only in the latter instance does a constitutional violation occur. Id.

For example, in response to the question, "Who was in the group that beat [the victim]?," the response "Me, deleted, deleted,

and a few other guys" obviously incriminates two codefendants of the crime of murdering the victim. See id. After Gray, however, this court has continued to allow general references to "another person" or "another individual" in such statements, because "[t]he Supreme Court has strongly implied that such statements do not offend the Sixth Amendment." United States v. Akinkoye, 185 F.3d 192, 198 (4th Cir. 1993). The implication to which Akinkoye refers is the Supreme Court's explicit pondering in Gray about "why could the witness not, instead, have said: 'Question: Who was in the group that beat [the victim]? Answer: Me and a few other guys,'" suggesting that such a neutral response would have been acceptable. See Gray, 523 U.S. at 196.

In Akinkoye, nontestifying codefendants' confessions were retyped, with the defendants' respective names replaced with the neutral phrase "another person" or "another individual," and the statements were read to the jury. 185 F.3d at 198. So redacted, neither confession facially implicated the other defendant. Id.

We find no constitutional violation on the facts of Appellant's case. The redacted statements here are like those in Akinkoye and unlike the offending statements in Gray. In Gray, the deleted reference to the defendants appeared in a statement regarding the ultimate issue in the case; on trial for murder, the defendants' names were redacted in response to the direct question of who beat the victim. It was clear to the jury upon hearing the

- 17 -

nontestifying codefendant's response that the statement had been altered by the deletion of two names. <u>Gray</u>, 523 U.S. at 196. Here, as in <u>Akinkoye</u>, there was no way to facially identify the "friend" or "individual" as Appellant after hearing the redacted statements without more information; there were four named conspirators in the indictment. Also, unlike in <u>Gray</u>, it would have been unclear to the jury that the statements had been altered at all.

Indeed, only when Fritter's out-of-court statement is linked with in-court testimony, which Appellant had an opportunity to challenge through cross-examination, might one infer that the out-of-court statement refers to Appellant. For example, Jurardo testified at trial that Appellant emerged from Campero's home after Campero's murder with a quantity of marijuana. It is this in-court statement that creates an inference that the "friend" of Fritter's whom he believed might have "had something to do with [Campero's] murder" was Appellant. <u>See</u> J.A. 1495. Additionally, the second robbery victim Han testified at trial that Appellant struck him with a pistol. Only when linked with this in-court testimony does Fritter's statement that an "individual told him that he had pistol[-]whipped . . . [an] Asian kid" implicate Appellant. <u>See</u> J.A. 1497-98.

<u>Richardson</u> holds that where a nontestifying codefendant's redacted out-of-court statement identifies the defendant by

implication when linked with evidence at trial, such statement is admissible so long as a proper limiting jury instruction is given. 481 U.S. at 208-09.  Here, the district court issued jury instructions admonishing jurors not to consider Fritter's out-of-court statements in the case against Appellant.

We therefore find no constitutional violation in either the admission of the 911 call or Appellant's non-testifying co-defendant's redacted out-of-court statement.  Having also concluded that the district court did not abuse its discretion in suppressing evidence of Appellant's prior state-court acquittal or in denying Appellant's motion for a mistrial, Appellant's conviction is

AFFIRMED.